UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHON GRAVES | CIVIL ACTION |
| VERSUS | NO. 16-0520 |
| W.S. MCCAIN, WARDEN, RAYBURN CORRECTIONAL CENTER | SECTION "F"(4) |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual Background

The petitioner, Stephon Graves ("Graves"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] Between October 1, 2008 and February 5, 2010, Graves was charged in four Bills of Information in Tangipahoa Parish and he challenges his conviction in each as part of a joint plea in the state courts. In Case Nos. 803291, 803292, and 1-000458, Graves was charged with one count of simple burglary.[3] In Case No.

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 3, Bill of Information (803291), 10/1/08; Bill of Information (803292), 10/1/08; Bill of Information (1-000458), 2/5/10.

803524, Graves was charged with one count of unauthorized entry into a place of business.[4] Graves initially entered pleas of not guilty in each case.[5]

The limited factual record available reflects that, on August 3, 2008, Graves entered Midtown Daiquiris in Amite, Louisiana, through a back window to steal liquor.[6] On August 7, 2008, after consuming beer, Graves entered Marullo Motors in Hammond, Louisiana, where he got into a vehicle and fell asleep. Two weeks later, he entered the Hot Wok restaurant in Amite through an open door, and when he was discovered in an unauthorized area of the business, he fled through an emergency exit. On December 31, 2009, Graves entered the Hooked restaurant, also referred to as the old Yum Yum Restaurant, in Hammond and stole eight boxes of shrimp that he planned to exchange for drugs. He was pushing the shrimp in a baby stroller when he was arrested.

On September 28, 2010, Graves withdrew his prior pleas and entered pleas of guilty to each count in the four cases.[7] The Trial Court sentenced Graves on December 1, 2010, to serve consecutive terms of twelve (12) years at hard labor for simple burglary in Case No. 803291, six (6) years at hard labor for unauthorized entry in Case No. 803292, ten (10) years at hard labor for simple burglary in Case No. 803524, and twelve (12) years at hard labor for simple burglary in

---

[4]St. Rec. Vol. 1 of 3, Bill of Information (803524), 10/28/08.

[5]St. Rec. Vol. 1 of 3, Minute Entry (803291), 2/11/10; Minute Entry (803292), 2/11/10; Minute Entry (803524), 3/9/10; Minute Entry (1-000458), 3/9/10; St. Rec. Vol. 2 of 3, Hearing Transcript (803291, 803292), 2/11/10; Hearing Transcript (all cases), 3/9/10.

[6]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Graves*, 90 So.3d 552 (La. App. 1st Cir. 2012) (Table); *State v. Graves*, No. 2011-KA-1422, 2012 WL 602411, at *1 (La. App. 1st Cir. Feb. 10, 2012); St. Rec. Vol. 1 of 3, 1st Cir. Opinion, 2011-KA-1422, 2/10/12.

[7]St. Rec. Vol. 1 of 3, Plea Minutes (803291), 9/28/10; Plea Minutes (803292), 9/28/10; Plea Minutes (803524), 9/28/10; Plea Minutes (1-000458), 9/28/10; St. Rec. Vol. 2 of 3, Plea Transcript (all cases), 9/28/10.

Case No. 1-000458.[8]  The Court, on April 26, 2010, denied Graves's motion to reconsider the sentences in each case as excessive based on the consecutive terms.[9]

On direct appeal to the Louisiana First Circuit Court of Appeal, Graves's appointed counsel argued that the state trial court erred in denying the motion to reconsider the sentences as excessive.[10]  The Louisiana First Circuit affirmed the convictions and sentences on February 10, 2012, finding no merit in the issue raised.[11]

The Louisiana Supreme Court denied Graves's related writ application without stated reasons on June 15, 2012.[12]  His conviction was final under federal law ninety (90) days later, on September 13, 2012, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

While that review was pending, on June 7, 2012, Graves submitted a motion to the state trial court seeking reconsideration of the order directing that his sentences be run consecutively.[13]

---

[8]St. Rec. Vol. 1 of 3, Sentencing Minutes (803291), 12/1/10; Sentencing Minutes (803292), 12/1/10; Sentencing Minutes (803524), 12/1/10; Sentencing Minutes (1-000458), 12/1/10; St. Rec. Vol. 2 of 3, Sentencing Transcript (all cases), 12/1/10.

[9]St. Rec. Vol. 1 of 3, Minute Entry (803291), 4/26/11; Minute Entry (803292), 4/26/10; Minute Entry (803524), 4/26/10; Minute Entry (1-000458), 4/26/10; St. Rec. Vol. 2 of 3, Motion to Reconsider Sentence, 12/28/10; Hearing Transcript, 4/26/13.

[10]St. Rec. Vol. 1 of 3, Appeal Brief, 2011-KA-1422, 9/9/11.

[11]*Graves*, 90 So.3d at 552; *Graves*, 2012 WL 602411, at *1; St. Rec. Vol. 1 of 3, 1st Cir. Opinion, 2011-KA-1422, 2/10/12.

[12]*State v. Graves*, 90 So.3d 1060 (La. 2012); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2012-KO-0575 (6/15/12).

[13]St. Rec. Vol. 3 of 3, Motion for Concurrent Sentence, 6/13/12 (dated 6/7/12).

The court denied the motion without comment on June 18, 2012.[14]  Graves did not seek review of this order.

On September 11, 2012, Graves submitted to the state trial court an application for post-conviction relief in which he asserted that he received inadequate assistance of counsel in violation of the Sixth Amendment when counsel advised him to enter the guilty pleas.[15]  According to the record, the state trial court held a hearing on July 23, 2013, at which Graves was present and represented by counsel, and the application was denied.[16]

After unsuccessful attempts to obtain copies from the trial court, Graves sought assistance from the Louisiana First Circuit to compel the trial court to produce written reasons for the denial of his post-conviction application.[17]  The Louisiana First Circuit denied his writ application on February 5, 2014.[18]  In doing so, the Court also advised Graves that he could seek review of the trial court's order if he filed for review on or before March 28, 2014.  He timely submitted a writ application on March 12, 2014, and the Court denied it without stated reasons on June 16, 2014.[19]

---

[14]St. Rec. Vol. 3 of 3, Trial Court Order, 6/18/12.

[15]St. Rec. Vol. 3 of 3, Application for Post-Conviction Relief, 9/13/12 (dated 9/11/12).

[16]There are no copies of the order or transcript in the record.  *See* St. Rec. Vol. 2 of 3, Letter to the Clerk, 7/29/13; Rec. Doc. No. 8, p. 3.

[17]The State failed to provide a copy of this writ application which is referenced in other pleadings.

[18]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2013-KA-1735, 2/5/14.

[19]*See*, Rec. Doc. No. 11 (1st Cir. Order, 2014-KW-0362, 6/16/14).  A member of the Court's staff contacted the clerk's office for the Louisiana First Circuit and was advised that the writ application was filed on March 12, 2014.  The Court also obtained a copy of the Louisiana First Circuit's order which has been separately filed into the record.  The State inexplicably failed to provide copies of the writ application and order and made no mention of the proceedings in its response.

The Louisiana Supreme Court also denied Graves's related writ application on June 15, 2015, without stated reasons.[20]

While these matters were pending, Graves's submitted another motion to the trial court seeking to have his sentences made concurrent.[21] The Trial Court set the matter for hearing on May 5, 2015, at which time it was apparently denied in open court.[22] Graves did not seek review.

On May 26, 2015, Graves submitted another motion for unspecified post-conviction relief and another request for concurrent sentences.[23] The Trial Court denied both motions on May 29, 2015, because similar requests were already denied.[24] Graves did not seek review of these orders.

## II.  Federal Habeas Petition

On January 20, 2016, the clerk of this Court filed Graves's petition for federal habeas corpus relief in which he asserts that he was denied effective assistance of counsel when he was advised to enter the pleas without explaining the sentences would run consecutively.[25]

The State filed a response in opposition to the petition arguing that the petition was not timely filed under federal law and review of the ineffective assistance of counsel claim was not exhausted in the state courts.[26]

---

[20] St. Rec. Vol. 2 of 3, 1st Cir. Order, 2013-KA-1735, 2/5/14.

[21] St. Rec. Vol. 3 of 3, Motion for Concurrent Sentence, 4/1/15.

[22] St. Rec. Vol. 3 of 3, Trial Court Order, 4/9/15; *see also*, Trial Court Order (2), 5/29/15.

[23] St. Rec. Vol. 3 of 3, Motion for Post-Conviction, 5/28/15 (dated 5/26/15); Motion for Concurrent Sentence, 5/28/15 (dated 5/26/15). The State failed to address these motions in its opposition response.

[24] St. Rec. Vol. 3 of 3, Trial Court Order, 5/29/15; Trial Court Order (2), 5/29/15. The State failed to address these in its opposition response.

[25] Rec. Doc. No. 1.

[26] Rec. Doc. No. 8.

In response to the State's opposition, Graves argues that he has proven his entitlement to relief, and that the incorrect advice given to him by counsel created a conflict of interest which entitles him to challenge the guilty plea.[27]

### III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[28] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on January 16, 2016.[29]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State contends that Graves's petition was not timely filed under federal law and that review of his claim for relief was not exhausted in the state courts.  The State's exhaustion defense is wholly in error and defied by the record, which when thoroughly reviewed and properly

---

[27]Rec. Doc. No. 10.

[28]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Graves's federal habeas petition on January 20, 2016, when pauper status was granted.  Graves signed and dated the petition on January 16, 2016, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to a federal court.

researched demonstrates that Graves did in fact seek review of the denial of his post-conviction application through to the Louisiana Supreme Court, including an extended deadline to do so by the Louisiana First Circuit.  The State failed to locate and consider all of the state court filings made by Graves.  Had counsel done so, Graves's exhaustion efforts would have been obvious.  The State's exhaustion defense must be rejected as wholly unfounded.

The record also does not support the State's conclusion that Graves's federal petition is untimely filed.  The State's failure to properly gather and research the complete records of Graves's state court pleadings has resulted in an incorrect calculation.  Graves's post-conviction pleadings and related writ applications clearly tolled the period of time from finality of his conviction under federal law through to the June 15, 2015, denial of his related writ application by the Louisiana Supreme Court.[30]  Since his federal petition was filed under the mailbox rule less than six months later, the State's timeliness calculations and conclusions are plainly wrong and unsupported by the record.  The State's limitations defense must also be rejected.

## IV. Standards for a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[30]Under a proper calculation, Graves's conviction was final under federal law on September 13, 2012.  At that time, however, Graves had already submitted an application for post-conviction relief to the state trial court on September 11, 2012.  Review of this application tolled the running of the AEDPA one-year filing period through the denial of the related writ application by the Louisiana Supreme Court on June 15, 2015.  The State has presented nothing to show any calculable gap in the state court proceedings.  The record also reflects that the period of review was actually if not equitably extended by the Louisiana First Circuit to allow Graves to seek review of the trial court's denial of his post-conviction application.

researched demonstrates that Graves did in fact seek review of the denial of his post-conviction application through to the Louisiana Supreme Court, including an extended deadline to do so by the Louisiana First Circuit.  The State failed to locate and consider all of the state court filings made by Graves.  Had counsel done so, Graves's exhaustion efforts would have been obvious.  The State's exhaustion defense must be rejected as wholly unfounded.

The record also does not support the State's conclusion that Graves's federal petition is untimely filed.  The State's failure to properly gather and research the complete records of Graves's state court pleadings has resulted in an incorrect calculation.  Graves's post-conviction pleadings and related writ applications clearly tolled the period of time from finality of his conviction under federal law through to the June 15, 2015, denial of his related writ application by the Louisiana Supreme Court.[30]  Since his federal petition was filed under the mailbox rule less than six months later, the State's timeliness calculations and conclusions are plainly wrong and unsupported by the record.  The State's limitations defense must also be rejected.

**IV.  Standards for a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[30]Under a proper calculation, Graves's conviction was final under federal law on September 13, 2012.  At that time, however, Graves had already submitted an application for post-conviction relief to the state trial court on September 11, 2012.  Review of this application tolled the running of the AEDPA one-year filing period through the denial of the related writ application by the Louisiana Supreme Court on June 15, 2015.  The State has presented nothing to show any calculable gap in the state court proceedings.  The record also reflects that the period of review was actually if not equitably extended by the Louisiana First Circuit to allow Graves to seek review of the trial court's denial of his post-conviction application.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.     Ineffective Assistance of Counsel

Graves argues that his appointed counsel did not advise him that the state court was going to order that the sentences be run consecutively if he entered the pleas of guilty to the charges. In his response to the State's opposition, under a broad reading, he also reiterates his arguments made in his state application for post-conviction relief that his first state appointed attorney failed to investigate the case before advising Graves to plead instead of going to trial. As a result of counsel's insistence that he enter the guilty pleas and counsel's failure to investigate and prepare the case, Graves filed an ethics complaint against him forcing a conflict of interest.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

Applying *Strickland* under *Hill* in the context of a plea, the deficiency prong is satisfied by a showing that "'counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).

To prove prejudice, the defendant must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy ... [Strickland's] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "'[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations with no showing of effect on the proceedings do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v.*

11

*Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). In the instant case, Graves fails to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case.

As an initial matter, Graves first claims that his ethics complaint against his first appointed counsel caused a conflict of interest in the representation and proof that counsel's advice was tainted. To the extent Graves requests that this federal habeas court assess the application of the

State's rules of professional conduct by the Louisiana Bar Association or the state trial court, he has failed to state a cognizable habeas claim. This federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do <u>not</u> review questions of state law. *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan*, 980 F.2d at 298.

Instead, the Supreme Court has made clear that claims regarding the effect of alleged ethical violations by an attorney, other than multiple or conflicting representations of clients, are to be addressed under the standards of *Strickland*, 466 U.S. at 668, regarding ineffective assistance of counsel under the Sixth Amendment. *See Mickens v. Taylor*, 535 U.S. 162, 174-76 (2002). "Under the *Strickland* standard, breach of an ethical standard does <u>not</u> necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (emphasis added); *Beets v. Scott*, 65 F.3d 1258, 1267 (5th Cir. 1995). A petitioner instead still must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Under a broad reading, Graves claims that his appointed counsel failed to properly investigate the case before advising him to enter guilty pleas. When a petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have

13

revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted).  In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Graves does not point to any inculpatory or beneficial information which further investigation would have revealed to counsel or which would have altered counsel's advice to enter the guilty pleas.  Graves's generalized claims remain unsupported and conclusory which is not sufficient to establish a deficiency in counsel's performance.  *Moawad*, 143 F.3d at 948; *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.") (citation omitted).

Furthermore, Graves has not demonstrated that counsel failed to locate any particular and available evidence or specific witnesses for the defense.  It is well settled that counsel's "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v.*

*Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  Here, Graves does not reference any evidence favorable to the defense which counsel should have considered in weighing before advising him to enter the pleas.

Graves also has not identified any particular, favorable witnesses for counsel to have relied upon in weighing the advisability of the pleas.  "'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (*quoting Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).

The record in this case reflects that, contrary to Graves's arguments, his appointed counsel filed relevant pretrial motions.  This included a motion for preliminary examination as to all charges, which was denied only after a full hearing by the state trial court.[31]  His counsel exhibited great familiarity with the evidence and the items provided to him in discovery.[32]  Counsel competently questioned the officers involved and demonstrated a thorough knowledge of the facts and incidents.

Graves has failed to establish a deficient performance or prejudice arising from counsel's actions in investigating and preparing the case or in advising that he enter the pleas of guilty.  His unsupported and conclusory arguments provide no reason to undermine the deference due to his counsel's strategy decisions or the denial of relief on this issue by the state courts under *Strickland*.

---

[31]St. Rec. Vol. 2 of 3, Hearing Transcript, 3/9/10.

[32]*See e.g.*, *Id.*, at pp. 9-10.

Graves also claims that his second appointed counsel failed to advise him that the trial court would impose the sentences to run consecutively. Under a broad reading, Graves suggests that this error by counsel tainted the voluntariness of his guilty plea. He has failed to prove his entitlement to relief.

The record reflects that Graves accepted a plea agreement in which the State agreed to nolle prosequi all of the pending charges in nine other cases against him and not to file a multiple offender bill in the four cases being resolved.[33] Graves discussed the plea at length with his appointed counsel before addressing the state trial court, with whom he also spoke extensively about the details of the crimes he committed.[34] There was no agreed upon sentence, as the Court and Graves himself recognized during the plea hearing.[35]

The record demonstrates that Graves's pleas of guilty were knowingly and voluntarily entered. A plea is considered knowing and voluntary "[i]f a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so … ." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981). "'The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged.'" *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990); *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir. 1996) (quoting *Barbee v. Ruth*, 678 F.2d 634, 635

---

[33]St. Rec. Vol. 2 of 3, Plea Transcript, pp. 2, 13, 9/28/10.

[34]*See e.g.*, *Id.*, at pp. 2, 7-11.

[35]*See e.g.*, *Id.*, at p. 16.

(5th Cir. 1982)). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), *cert. denied*, 474 U.S. 838 (1985); *United States v. Hernandez*, 234 F.3d 252, 256-57 (5th Cir. 2000) (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence). Louisiana law follows the same directives in its requirements under the provisions of La. Code Crim. P. art. 556.1 regarding guilty pleas to a felony.[36]

In this case, Graves's and the trial court engaged in a lengthy discussion during which Graves provided specific factual details about the crimes he committed and to which he was entering the guilty pleas.[37] The trial court also advised him of each of his constitutional rights which Graves readily admitted and understood he was willing to waive.[38] The state trial court also outlined each of the crimes and specifically informed Graves of the maximum and minimum sentences applicable to each of the four charges to which he was pleading.[39] The Court also

---

[36]For example, La. Code Crim. P. art. 556.1(A) provides in relevant part as follows:
A.   In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1)   The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. [. . .]
(3)   That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(4)   That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

[37]*See e.g.*, *Id.*, at p. 16.

[38]*Id.*, at pp. 3-7.

[39]*Id.*, at pp. 4-5.

specifically advised Graves that it did not know what sentence would be imposed until after the presentence investigation report was received and Graves was content with that deferral.[40]

When the Court addressed Graves at the sentencing hearing, it recalled thirty (30) years of Graves's criminal history, including some violent crimes and at least ten (10) felony convictions.[41] Considering Louisiana's sentencing statutes, including mitigation under La. Code Crim. P. art. 894.1, the Trial Court declared Graves to be a "menace to society" and sentenced him to the consecutive sentences totaling 40 years in prison.[42]

The record contains nothing to establish that Graves's counsel caused him to enter an involuntary or unknowing plea of guilty based on the sentence. Neither counsel nor the Trial Court itself knew what particular sentence would be imposed or how it would be run, and Graves was made aware of that open-ended concern at the plea hearing. Graves has not established that counsel misled him with regard to the sentencing parameters as an inducement to enter the plea.

Furthermore, the record also makes clear that Graves's pleas of guilty avoided a multiple bill and resulted in the dismissal of nine other felony cases against him. This reflects these benefits to have been the main impetus behind Graves's decision to enter the plea agreement. The Court is aware that Graves's suggests that, had he known he would serve consecutive sentences, he would have chosen to go to trial. The record, however, reflects that Graves greatly benefited from the pleas and was not prejudiced by counsel's advice to enter the pleas. He has not shown that

---

[40]*Id.*, at p. 16.

[41]St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 6-17, 12/1/10.

[42]*Id.*, at pp. 18, 19-20.

counsel's advice under the circumstances of his case was unreasonable.  *See Day*, 566 F.3d at 536 (quoting *Strickland*, 466 U.S. at 693).

Based on the foregoing, Graves has failed to establish that his counsel's performance was deficient or prejudicial.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Graves's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[43]

New Orleans, Louisiana, this 19th day of August, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[43]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.